AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

September 10, 2020

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Victorino OROZCO-Cerna | ) | Case No. **4:20mj1673** |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  August 10 to September 8, 2020  in the county of  San Jacinto  in the  Southern  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC Sections 841(a)(1) and (b)(1)(A)(viii) | Knowingly, intentionally, and unlawfully possess with intent to distribute over 500 grams of a mixture or substance containing methamphetamine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

See Attachment "A"

☑ Continued on the attached sheet.

*Complainant's signature*

Cesar Hernandez, DEA Special Agent
*Printed name and title*

Sworn to me telephonically.

Date: 09/10/2020

*Judge's signature*

City and state:  Houston, Texas    Sam S. Sheldon, U.S. Magistrate Judge
*Printed name and title*

**Attachment "A"**

Your affiant, DEA Special Agent Cesar Hernandez, being duly sworn, deposes and states the following:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), U.S. Department of Justice, and as such am empowered by Title 21, United States Code, Section 878 to enforce Title 21 and other criminal laws of the United States, and to make arrests, and to obtain and execute search, seizure, and arrest warrants. I am currently assigned to the Houston Division Office. I have been employed by the DEA since February 2001. Prior to being employed by the DEA, I was employed as an Elgin Police Officer for 4.5 years in Elgin, Illinois. During the course of my employment with DEA, I have participated in several drug trafficking investigations, including investigations which have led to felony arrests for violations of Title 21 and Title 18 of the United States Code. In addition, I have received extensive training in drug trafficking and money laundering investigations.

2. I am making this Affidavit in support of Criminal Complaint to be presented to the United States District Court for the Southern District of Texas in the matter of United States v. **Victorino OROZCO-CERNA** did knowingly and intentionally possessed with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code Sections 841(a)(1) and (b)(1)(A)(viii). This affidavit is based on personal observation, information related to me by other sworn law enforcement officers, my training, and experience in the investigations of narcotics trafficking.

3. In August 2020, the DEA Houston Division along with Texas Department of Public Safety (DPS), Houston Police Department (HPD), and Conroe Police Department (CPD) combined resources and began investigating the **Victorino OROZCO-Cerna** Drug Trafficking Organization (DTO). Prior to recent DEA involvement, DPS, CPD, and HPD believed **OROZCO w**as a multi-kilogram distributor of methamphetamine in Liberty and San Jacinto counties in north Houston, Texas.

4. On Monday, August 10, 2020, at 12:00 p.m., CPD Narcotics Detectives conducted a controlled purchase of approximately 120 grams of methamphetamine from **OROZCO**. CPD utilizing a confidential source hereafter referred to as CS, contacted **OROZCO** utilizing cellular number of (346)-277-2372. Prior to the transaction, CPD and the CS met at a predetermined neutral

location. The CS was given instructions for the pending drug transaction and officers provided the CS with $1700.00 of CPD imprest funds to purchase the methamphetamine. In addition, the CS was equipped with a video/audio recording device. The CS contacted **OROZCO** and advised him (**OROZCO**) "I need four." **OROZCO** affirmed and stated "5 minutes" and the phone call ended. Shortly thereafter, the CS left the neutral location and drove to 181 Stag Lane, Shepherd, Texas, and parked on the driveway of this abandoned house. According to the CS, this abandoned house is where the CS and **OROZCO** have consummated drug transactions in the past. Shortly thereafter, a single cab Chevrolet truck driven by **OROZCO** arrived and parked on the on the driver side of the CS's vehicle. The CS exited the vehicle, and opened the passenger side door of **OROZCO's** truck. Once in the truck, **OROZCO** provided the CS a large Ziploc plastic bag, which contained the methamphetamine wrapped in a paper towel. The CS inspected the narcotics and then tendered the $1700.00 to **OROZCO**. After the transaction, the CS met with controlling officers and provided them with the suspected methamphetamine, which weighed approximately 120 grams. CPD processed the methamphetamine in accordance to CPD policy, procedures and later submitted the methamphetamine in the CPD drug vault for storage and safekeeping.

5. On Monday, August 17, 2020, plans were formulated with members of DEA Group D-22, Texas DPS Criminal Investigation Division (CID) and CPD Narcotics division to conduct a controlled purchase of four (4) ounces of methamphetamine from **OROZCO**. A CPD confidential Source, hereinafter referred to as CS, and **OROZCO** had previously agreed upon the purchase price of $1700.00 for the (4) ounces of methamphetamine. Prior to the purchase, law enforcement personnel met at a predetermined neutral location. At the meeting, the CS was given instructions on the controlled purchase and was provided $1700.00 of DPS/CPD imprest funds. The CS and CS's vehicle were searched for any contraband before and after the transaction with negative results. The CS was also equipped with an audio/video recording device. At approximately 2:00 p.m., surveillance was established in the vicinity of 181 Stag, Shepherd, Texas, 77371. During this time, the CS and **OROZCO** spoke on the phone discussing the pending narcotics transaction. The CS confirmed he/she needed four (4) ounces of methamphetamine. **OROZCO** advised the CS he (**OROZCO**) would call the CS back in 10-15 minutes. Shortly thereafter, **OROZCO** called the CS back and confirmed "you need four?" The CS affirmed and **OROZCO** replied, "I'll see you there." As stated above, this

location has been previously established between the CS and **OROZCO**. Both the CS and **OROZCO** have completed narcotics transactions in the past at the same location, (181 Stag Ln, Shepherd, Texas).

6. At approximately 2:20 p.m., The CS left the neutral location and went to 181 Stag Ln. The CS pulled into the driveway of an abandoned house at the corner or Stag and Nottingham. After several minutes, **OROZCO** arrived, driving a tan, single cab Chevrolet Silverado pick-up truck. **OROZCO** exited his pickup truck and walked to the driver-side window of the CS's vehicle. Based on the video recording, **OROZCO** is observed reaching inside the CS's vehicle and placing a gray plastic bag on the CS's lap that contained approximately 118 grams of a hard white glass like substance. The purchased substance was later submitted to the DPS crime laboratory for analysis and safekeeping. Based on DPS crime laboratory results, the submitted substance tested positive for the presence of methamphetamine.

7. On August 24, 2020, plans were formulated with members of DEA Group D-22, Texas DPS CID and CPD Narcotics to conduct a controlled purchase of nine (9) ounces of crystal methamphetamine from **OROZCO**. A CPD confidential Source, hereinafter referred to as CS and **OROZCO** had previously agreed upon the purchase price of $3800.00 for the nine (9) ounces of methamphetamine. Prior to the purchase, law enforcement personnel met at a predetermined neutral location. At the meeting, the CS was given instructions on the pending controlled purchase. Prior to meeting with **OROZCO**, the CS contacted **OROZCO** to confirm the details of the narcotics transaction. **OROZCO** told the CS that he only had five (5) ounces on hand. **OROZCO** and the CS agreed on the new amount and price for the methamphetamine to be $2400.00. The CS and CS's vehicle were searched for any contraband before and after the transaction with negative results. The CS was also equipped with an audio/video recording device and officers provided the CS with $2400.00 in DPS funds for the purchase.

8. At approximately 2:00 p.m., surveillance was established in the vicinity of 181 Stag Ln., Shepherd, Texas, 77371. During this time, the CS and **OROZCO** spoke on the phone discussing the pending narcotics transaction. At approximately 2:30 p.m., the CS left the neutral location and went to residence on 181 Stag Ln. Prior to arriving at the house, the CS received a call from **OROZCO**. **OROZCO** advised the CS to walk inside the house and get the methamphetamine which was inside a black bag on the counter top, then leave the money

on the counter. The CS agreed and pulled into the driveway of an abandoned house at the corner or Stag Ln. and Nottingham similar to the previous weeks. The CS entered the house, walked to the kitchen counter, and inspected the methamphetamine. The CS took the methamphetamine and then placed the money ($2,400.00) on the kitchen counter top as instructed by **OROZCO**. The CS stated the house is currently under remodeling construction and no one lived there. The CS exited the residence and drove to the neutral location and met with controlling officers. According to the CS, **OROZCO** and the CS have conducted similar drug transactions in the past. After the transaction, the CS provided the purchased narcotics to DPS SA Kevin Hunt. The plastic bag that contained approximately 162 grams of a hard white glass like substance. The purchased substance was later submitted to the DPS crime laboratory for analysis and safekeeping. Based on DPS crime laboratory results, the submitted substance tested positive for the presence of methamphetamine.

9. At approximately 2:52 p.m., TFO Sean Horton observed a tan Chevrolet single cab pickup truck arrive at the target location. This pickup truck has been observed in the past by the CS and law enforcement as being driving by **OROZCO**. TFO Horton observed a male Hispanic, exit the pickup and walk inside the house. Shortly after, TFO Horton observed the same unknown Hispanic male exit the residence and re-enter the Chevrolet pickup truck and drive away. TFO Horton observed the pickup truck drive to the area of 181 Friar Tuck, but lost site of the pickup truck shortly thereafter. At approximately 3:20 p.m., SA Hernandez drove by the 181 Friar Tuck and surrounding areas looking for the Chevrolet truck or **OROZCO** with negative results.

10. On Tuesday, September 08, 2020, plans were formulated with members of DEA Group D-22, Texas DPS CID, HPD, and CPD Narcotics to arrest **OROZCO**. A CPD CS contacted **OROZCO** and arranged for a nine (9) ounce purchase of methamphetamine. Just like the previous three (3) drug transactions, **OROZCO** and the CS agreed to meet at the aforementioned abandoned residence. At approximately 1:30 p.m., the CPD CS contacted **OROZCO** and arranged for the purchase of nine (9) ounces of methamphetamine for the purchase price of $3,800.00. At that time, law enforcement established surveillance at 181 Stag Ln. (abandoned house) and surrounding areas. At approximately 2:33 p.m., the CS arrived at the aforementioned residence. **OROZCO** had previously entered the house and was awaiting the CS' arrival. The CS entered the house and inspected the narcotics. The CS then told

OROZCO that he/she had to get the money in the car. The CS exited the residence followed by OROZCO who stood at the front porch. As the CS walked toward his/her car, DPS personnel concurrently arrived at the house. OROZCO observed the law enforcement personnel and ran back inside the residence. DPS personnel followed OROZCO entered the abandoned residence and placed OROZCO in custody without incident. Inside the residence, law enforcement discovered approximately 305 gross grams of a hard white substance suspect methamphetamine inside a black container on the kitchen counter top. OROZCO was later transported to the San Jacinto County jail to await his judicial proceedings. The suspected methamphetamine was collected, transported and later mailed to the DEA Laboratory in Dallas, Texas for analysis and safekeeping.

Cesar Hernandez
Special Agent
Drug Enforcement Administration

Subscribed and sworn to telephonically on September 10, 2020, and I hereby find probable cause.

Sam S. Sheldon
United States Magistrate
Southern District of Texas